577 A.2d 1270

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN W. GRAFF, DEFENDANT-RESPONDENT.

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JEFFREY R. ELLIS, DEFENDANT-RESPONDENT.

Argued February 27, 1990—Decided August 6, 1990.

*James J. Gerrow, Jr.,* Assistant Prosecutor, argued the cause for appellant (*Stephen G. Raymond,* Burlington County Prosecutor, attorney; *Larry E. Holtz* and *Deborah A. Siegrist,* Assistant Prosecutors, of counsel and on the briefs; *Steve Rothberg,* on the brief).

*Andrew J. Karcich* argued the cause for respondent John W. Graff (*Sherman, Silverstein & Kohl,* attorneys).

*Mark S. Guralnick* argued the cause for respondent Jeffrey R. Ellis (*Garber & Guralnick,* attorneys).

*Brian J. Neary* argued the cause on behalf of *amicus curiae* Association of Criminal Defense Lawyers of New Jersey.

The opinion of the Court was delivered by

O'HERN, J.

These direct appeals from the Law Division, which granted defendants' motions for jury trials for first and second driving-while-intoxicated (DWI) offenses, were argued with *State v. Hamm*, 121 *N.J.* 109, 577 *A.*2d 1259 (1990), also decided today.

In its thoughtful opinions, the Law Division analyzed the effect of the then-recent decision of the United States Supreme Court, *Blanton v. North Las Vegas*, 489 *U.S.* 538, 109 *S.Ct.* 1289, 103 *L.Ed.*2d 550 (1989), on our DWI laws. It reasoned that the multiple direct and collateral consequences of a DWI conviction reflected a legislative judgment that the offense was constitutionally "serious" under *Blanton*. In addition to the direct statutory penalties described in *Hamm*, the Law Division emphasized the additional potential, among others, that a repeat DWI offender who had refused a breath test might be subject to a three-year loss of license as an habitual driving offender under *N.J.S.A.* 39:5–30. The Law Division hypothesized for a second offender a potential seven-year suspension as a consequence of the interrelated provisions. In addition to the monetary insurance surcharges referred to in *Hamm*, the court below noted that the suspended DWI offender may be relegated to an assigned-risk form of insurance, and suffer other burdens, such as reexamination to determine ability to operate before having any driving privilege restored. Finally, it emphasized the recidivist penalties that mount after each DWI conviction, thus making even a first offense constitutionally "serious" despite the limited loss of liberty or license.

As we noted in *State v. Hamm, supra*, 121 *N.J.* 109, 577 *A.*2d 1259, these are consequences of importance, and indeed of magnitude, yet they do not equate with the measure of a constitutionally "serious" offense. Inasmuch as we held in *Hamm* that a defendant does not have the right to a jury trial for a third DWI offense, we therefore reverse the judgments of the Law Division, which granted jury trials for first and second DWI offenses.

Defendant John W. Graff was arrested and charged with DWI in violation of *N.J.S.A.* 39:4–50, and refusing to take a breathalyzer test in violation of *N.J.S.A.* 39:4–50.4a. Graff had been previously convicted of DWI. Graff moved before the municipal court to transfer his case to the Law Division for a jury trial. The municipal court denied Graff's motion, but permitted him to take an interlocutory appeal from that denial. On July 27, 1989, the Law Division concluded in an unpublished opinion that the United States Constitution entitled Graff, as a second DWI offender, to a jury trial.

Defendant Jeffrey R. Ellis was charged with several motor-vehicle offenses, including DWI. He pled guilty to two offenses and was convicted of DWI in municipal court. For DWI, the court sentenced him as a first offender to twelve hours' detainment in an Intoxicated Driver Resource Center (IDRC) and thirty days in jail. The jail sentence would be suspended conditioned on his successful completion of the IDRC program. In addition, the court suspended his license to drive for nine months and fined him $350, plus a $100 surcharge and court costs. Ellis appealed to the Law Division, which ruled on December 5, 1989, in an unreported opinion that first-time DWI offenders have a constitutional right to trial by jury. In doing so, the court relied heavily on its earlier opinion in *Graff*. We certified the State's appeals of the *Graff* and *Ellis* matters directly while they were pending in the Appellate Division. *R.* 2:12–1.

As noted in *State v. Laurick*, 120 *N.J.* 1, 575 *A.*2d 1340 (1990), DWI penalties are often revised, and we intend no definitive compendium of them by reciting those alleged by the defendants. If Graff is convicted of DWI, as a second offender he would receive a mandatory two-year license suspension, a fine ranging from $500 to $1,000, thirty days of community service, and a term of imprisonment between two days and ninety days. *N.J.S.A.* 39:4–50(a)(2). Furthermore, if Graff is convicted of refusing to take the breathalyzer test as well as his second DWI offense, he would receive a two-year license

suspension under *N.J.S.A.* 39:4–50.4a that would run consecutively to the suspension under *N.J.S.A.* 39:4–50(a)(2). He would be subject to a potential additional license suspension of up to three years as an "habitual offender" under *N.J.S.A.* 39:5–30. He would also be fined between $250 and $500 under *N.J.S.A.* 39:4–50.4a. The maximum penalties Ellis faced prior to being sentenced as a first offender were a $400 fine, one-year license suspension, and thirty days' imprisonment. *N.J.S.A.* 39:4–50(a)(1).

Both defendants make the general argument that DWI in itself is a "serious" offense, and that DWI defendants are entitled to a jury trial based on society's treatment and perception of DWI as a "crime." Defendants also argue that in addition to the license suspensions, fines, and possible incarceration periods for DWI, the various collateral costs of a DWI conviction mandated by statute—for example, the insurance surcharge of $1,000 for three years, see *N.J.S.A.* 17:29A–35b(2); the $100 drunk-driving-enforcement-fund surcharge, see *N.J. S.A.* 39:4–50.8; participation in the IDRC program at the defendant's expense, see *N.J.S.A.* 39:4–50(b); and increased insurance premiums—are "punitive" in nature and signal the Legislature's intent to treat all DWI offenses as "serious." Graff contends that the statutory penalties for a second offender charged with both DWI and refusing to take a breathalyzer test elevate the offense to be a "serious" offense as the term is articulated in *Blanton v. North Las Vegas, supra,* 489 *U.S.* 538, 109 *S.Ct.* 1289, 103 *L.Ed.*2d 550. Ellis emphasizes various costs and burdens imposed on first offenders, including with the previously mentioned collateral costs the license-restoration fee under *N.J.S.A.* 39:3–10a; possible cancellation of insurance under *N.J.S.A.* 17:29C–7(A)(b); and possible non-renewal of insurance based on defendant's designation as a "dangerous driver" under *N.J.A.C.* 11:3–23.5 and *N.J.A.C.* 11:3–23.8(a)(14). Ellis also concludes that the penalties for a first offense qualify DWI as "serious" under *Blanton,* and warrant a jury trial.

Although burdensome, the potential collateral licensing problems or insurance consequences are not unique. A repeat speeder might face the same consequences. Even so, without ruling on whether the combined penalties for a second DWI offense and refusal to take the breathalyzer should be viewed together for sixth-amendment purposes, we recognize that Graff's four-year license revocation, possible ninety-day term of imprisonment, and possible administrative suspension if convicted are not as burdensome as the penalties faced by a third DWI offender in New Jersey. *See State v. Hamm, supra,* 121 *N.J.* at 117, 577 *A.*2d at 1263. And, as we noted in *Hamm,* any fine below $5,000 would satisfy Congress' most recent definition of a "petty" offense. *Id.* at 114, 577 *A.*2d at 1262 (quoting *Blanton, supra,* 489 *U.S.* at ——, 109 *S.Ct.* at 1293, 103 *L.Ed.*2d at 557). Although the collateral costs of a DWI conviction may approach $5,000, the monetary penalties (*i.e.,* fines) clearly do not.

At oral argument, Ellis emphasized the fact-sensitive nature of DWI, pointing out that he suffered from medical problems that could have explained the results of both the balance and breathalyzer tests. The evidence is of an unfortunate illness, but a jury is not required to hear the evidence, although there is one aspect of that illness that remains to be decided. Otherwise, inasmuch as our holding in *Hamm* denied the right to a jury trial for a third DWI offense, we accordingly rule that first and second offenders also do not have that right.

The judgment of the Law Division in both cases is reversed. The *Graff* matter is remanded to the municipal court for proceedings in accordance with this opinion. The judgment in the *Ellis* matter is remanded to the Law Division to consider Ellis' contention that he was unfairly denied a requested adjournment to offer evidence of his illness in the municipal court to counter non-performance in certain physical tests. In view of its disposition of the jury trial issue, the Law Division did not resolve that issue or a challenge to the sentence.

*For reversal*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For affirmance*—None.