957 A.2d 699
STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JOHN TAIMANGLO, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 10, 2008—Decided October 6, 2008.

114

Before Judges STERN, A.A. RODRÍGUEZ and LYONS.

*Richard W. Berg,* attorney for appellant.

*Anne Milgram,* Attorney General, attorney for respondent (*Carol M. Henderson,* Assistant Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

In the absence of adherence to the Rules governing appeals, we consider defendant's otherwise untimely appeal. Because Part III of the *Rules Governing the Courts of the State of New Jersey* apply to municipal appeals in the Law Division, defendant was entitled to receive the advice required by *R.* 3:21–4(h) and to file this appeal as within time, pursuant to *State v. Molina,* 187 *N.J.* 531, 902 *A.*2d 200 (2006),[1] because the Rule was not honored. To that end, a defendant must be sentenced de novo on the municipal appeal or waive that right on the record.

I.

On October 9, 2003, sixteen-year-old C.L. was hired to babysit for J.H., defendant's three-year-old son. C.L. arrived at defendant's home at approximately 6 p.m. Defendant's fiancée (now wife) was leaving to take the couple's two daughters shopping and

---

1 "[I]f a defendant has not been advised of his right to appeal as provided under *R.* 3:21–4(h), he is entitled to as within time relief provided the sentencing transcript confirms that he was not advised of his right to appeal under the *Rule,* and his application for leave to appeal as within time is filed no later than five years from the date of his sentencing." *State v. Molina, supra,* 187 *N.J.* at 536, 902 *A.*2d 200.

defendant was supposed to leave as well. However, defendant remained in the house with C.L. and J.H. "for a couple of hours."

Defendant was trying to put J.H. to bed, when J.H. said that he wanted to watch television in his parents' room and defendant said he wanted C.L. "to come with them." When the three entered the bedroom, J.H. laid down "in the middle" of his parents' bed and C.L. and defendant laid down on either side. Defendant began "hugging" J.H. and he "reached over and grabbed [C.L.'s] hand and was rubbing it and he kissed it once...." He rubbed her hand "for pretty much the whole period of time that [they] were lying there," for approximately four to five minutes.

At that point, J.H. decided that he wanted to go to the girls' room and watch television. C.L. and J.H. went to that room and watched television for ten or fifteen minutes. Thereafter, J.H. wanted to get something out of the living room and C.L. "followed" him there.

While J.H. was in the living room looking for his toys, C.L. stood in the doorway. Defendant "came over and sat next to [C.L.] and put his arm around [her]," rubbed her thigh both "on the inside and outside," "kissed [her] hip," and told her that she had "strong legs." Defendant asked C.L. if she "worked out."

C.L. and J.H. then went back to the girls' room to watch television again. When J.H. fell asleep, C.L. went back downstairs. Defendant had left by then, and C.L. began watching television. When the telephone rang, C.L. answered it. Defendant was calling to see if J.H. was sleeping. Defendant said that "he wished [J.H.] fell asleep earlier so [defendant and C.L.] would have had some time together."

After about a half-hour, defendant returned home. C.L. was sitting on a couch watching television. Defendant asked her "a couple of times how old [she] was and when [she] was turning 18." He asked "how strict" C.L.'s mother was and how late she was "allowed to stay out." Defendant told C.L. to give him a call "on one of [her] days off" and he'd "rearrange his schedule" so that

they "could get a hotel room." Defendant told C.L. that he would "rent pornographic movies" so she "knew how [she'd] want to do it." After defendant's fiancée returned home, around 10 o'clock, C.L. walked home and told her mother about defendant's behavior.

Defendant was tried in municipal court and convicted of harassment, a petty disorderly persons offense, *N.J.S.A.* 2C:33–4(b). A pre-sentence report was ordered. On May 27, 2004, defendant appeared for sentencing. On that appearance defendant claimed that he had rented a hotdog cart to the judge in 1986, but had not been paid. The judge remembered getting a hotdog cart from a client "for a charity event," but had "no recollection whatsoever" of the defendant. Nonetheless, he said that "even if [defendant] consented now to me sentencing him, that would be improper in light of these allegations." The judge thereafter stated:

> It will be up to the assignment judge to make ... a determination whether, in fact, the verdict which I rendered is upheld and if ... no one had any knowledge of this, I don't know why all of a sudden this was brought to his lawyer's attention because certainly it was no thrill of mine to hear this case, and I would have been more than happy to disqualify myself if I had ever known there was any ... involvement, and this case took a couple of days of trial time, and for some reason your client never bothered to mention it. I don't know why.

Defendant's counsel apologized, but said that "once [the hotdog cart situation] was told to me, ... it had to be raised." Defendant's counsel said that he and the prosecutor would "take it up with [Assignment] Judge Armstrong," who subsequently concluded that:

> Mr. Taimanglo's delay in raising the "hot dog" cart issue until after the trial occurred and until after he was found guilty of the charge on April 1, 2004[is] rather inexplicable. However, if there is merit to Mr. Taimanglo's concerns, he should not be precluded from making the appropriate formal application on the record at the time of sentencing requesting that [the municipal judge] recuse himself from the sentencing. If Mr. Taimanglo chooses to make such an application, I would expect his representations regarding the "hot dog" cart allegation to be made under oath.
>
> Should any such recusal application be granted, I will appoint another judge to review the record and impose the sentence.

At a hearing in the municipal court, defendant testified that, "at the end of the case," after the judge found him guilty, defendant's

business partner in Frankfurters Unlimited reminded him of the event and that the judge "owed" them some money "for a hot dog cart that was delivered" to his home. The trial judge then recused himself, and another municipal court judge imposed the sentence. A five-day sentence to county jail was "suspended upon the condition of no contact of any type with the victim or her family for a minimum of 6 months." Fines, penalties and costs were also imposed.

Defendant appealed to the Law Division, but did not appear for the trial de novo. On November 30, 2004, defense counsel explained the reason therefor, and asked that the trial de novo be conducted without defendant:

[DEFENDANT'S COUNSEL]:

. . .

Your Honor, first I'll indicate for the record Mr. Taimanglo at this time is still on his honeymoon in Mexico and through inadvertent error from my office my secretary did not send notices out the regular way. I have seen him on the day of his wedding, as I indicated to your Honor and counsel in chambers, I think that was an error on my office's part; I would ask the Court accordingly to allow me to still proceed on Mr. Taimanglo's behalf to argue this appeal, sir.

THE COURT: Well, you're taking blame for his not being here today?

[DEFENSE COUNSEL]: Yes. I have a letter from my office which was dated—

THE COURT: And you are asking the Court not to postpone it but rather to waive his appearance and you'll argue it on the merits?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: All right. Do you want to be heard in that regard, sir?

[PROSECUTOR]: Your Honor, I wouldn't oppose that.

THE COURT: Then we'll hear the argument on the merits.

The trial de novo was conducted on the record that day, and defendant was found guilty and sentenced to the "same sentence" as imposed in municipal court.[2] Defendant subsequently petitioned for post-conviction relief ("PCR") which was denied in municipal court by the sentencing judge and on appeal to the Law Division.[3] Defendant thereafter sought to appeal both his convic-

---

[2] The judgment was dated December 6, 2004.

[3] The petition claimed that counsel should have better explained the benefits of a plea offer under an ordinance and should have raised the conflict before the

tion and the denial of PCR to us.[4] He sought to raise issues that had not previously been raised relating to the closing of the courtroom during trial and his lack of presence on the municipal appeal. By order dated September 11, 2006, we:

> summarily remanded [the matter] for consideration of defendant's present contentions as part of the record on the post-conviction relief proceedings. To the extent defendant may be precluded from raising on post-conviction relief an issue not raised on direct appeal, the Law Division shall consider whether a defendant must be present for a trial de novo on the record in the absence of a waiver and if there was a valid waiver in this case, and the impact of defendant's non-appearance at the trial de novo insofar as it impacts on the failure of the court to honor the requirements of R. [3:21–4(h) ] for purposes of entertaining a late direct appeal.

On remand, the Law Division found that it had incorrectly proceeded on the trial de novo without defendant present. Therefore, it found defendant was denied his right of allocution at sentencing and his right to be notified that he had forty-five days to appeal to us from the conviction on trial de novo. It then gave defendant the right of allocution, but not to re-litigate the issue of innocence or guilt. After defendant exercised his right of allocution, the Law Division again imposed "the same sentence," and notified defendant of his right to appeal.

On this appeal, defendant argues:

POINT I. THERE ARE NO PROCEDURAL PCR BARS TO DEFENDANT'S APPELLATE CONTENTIONS, AND THE STATE'S CROSS–APPEAL IS MERITLESS.

POINT II. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS UNDER *U.S. CONST.*, AMEND. SIX AND *N.J. CONST.*, ART. 1, ¶ 10, TO A PUBLIC TRIAL. (Not Raised Below)

---

trial because counsel had been advised of same, and that counsel was ineffective for his handling of these and other matters. The judges in the municipal court and Law Division, based on testimony on the municipal PCR, found that counsel (in the words of the Law Division) had not been advised of "any alleged conflict until after the finding of guilt."

[4] The PCR petition was denied in the Law Division on February 21, 2006. A notice of appeal from the denial of PCR, including reference to the 2004 conviction, was dated April 4, 2006, and a motion for leave to appeal within time from the conviction was filed on September 6, 2006.

POINT III. THE TRIAL JUDGE ERRED IN FAILING TO ORDER A NEW TRIAL AFTER IT WAS DISCLOSED THAT HE HAD A PERSONAL CONFLICT OF INTEREST.

POINT IV. DEFENDANT'S FUNDAMENTAL CONSTITUTIONAL RIGHTS WERE DENIED BY HIS ABSENCE FROM TRIAL DE NOVO WITHOUT A WAIVER OF HIS RIGHT TO BE PRESENT AND THE JUDGMENT MUST BE REVERSED.

POINT V. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

A. TRIAL COUNSEL'S FAILURE TO OBJECT TO THE CLOSURE OF TRIAL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

B. TRIAL COUNSEL'S FAILURE TO MAKE ANY MOTION TO VACATE THE CONVICTION AFTER IT WAS DISCLOSED THAT THE TRIAL JUDGE HAD A PERSONAL CONFLICT OF INTEREST CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

C. APPELLATE COUNSEL'S FAILURE TO RAISE THE ISSUE THAT THE TRIAL JUDGE'S PERSONAL CONFLICT OF INTEREST REQUIRED A NEW TRIAL ALSO DEPRIVED DEFENDANT OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE TRIAL DE NOVO.

D. APPELLATE COUNSEL'S UNAUTHORIZED WAIVER OF DEFENDANT'S APPEARANCE AT THE DE NOVO TRIAL CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.[5]

## II.

■ As noted at the outset, we will consider the points raised on the direct appeal. A trial de novo is conducted pursuant to *R.* 3:23–8 and the Part III rules apply to the required de novo sentencing. *See R.* 3:1–1; *R.* 3:21–4. Sentencing is de novo and defendant is entitled to make a statement in his or her behalf before the sentence is imposed. *See R.* 3:21–4(b); *State v. States,* 44 *N.J.* 285, 293–94, 208 *A.*2d 633 (1965); *State v. Mull,* 30 *N.J.* 231, 238–40, 152 *A.*2d 572 (1959). Accordingly, the failure to advise defendant of his right to appeal to this court after sentencing in the Law Division and entry of judgment, permits a defendant to appeal to us consistent with *State v. Molina, supra.*

---

[5] The State filed a cross-appeal. Its case information statement states "the Law Division . . ., instead of re-sentencing the defendant and potentially allowing him a direct appeal from the original judgment, should have denied PCR." The Attorney General subsequently was substituted as counsel for the State and apparently abandoned the cross-appeal.

We fully recognize that, particularly because a sentence cannot be increased on a municipal appeal and the matter is almost always tried de novo on the record, *see State v. Kashi,* 180 *N.J.* 45, 49, 848 *A.*2d 744 (2004); *State v. Nash,* 64 *N.J.* 464, 317 *A.*2d 689 (1974); *State v. DeBonis,* 58 *N.J.* 182, 276 *A.*2d 137 (1971); *R.* 3:23–8, defendants frequently elect not to attend when represented by counsel. *See Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 277 *A.*2d 216 (1971) (right of indigent to assigned counsel). Nevertheless, because defendant is entitled to be present, *see R.* 3:16, a waiver must be submitted by counsel either in writing or orally by counsel if authorized to do so.[6] In either event, if defendant waives the right to be present at sentencing, counsel must agree to convey the advice required by *R.* 3:21–4(h). Moreover, if the trial de novo is disposed by written opinion, as frequently occurs when the sentence is not challenged and defendant waives his or her right to be present to allocate before sentencing, the Law Division judge should expressly refer to the requirements of *R.* 3:21–4(h) in the opinion.[7]

## III.

As defendant never received the advice to which he was entitled under *R.* 3:21–4(h), we proceed to consider his direct appeal as

---

[6] Because of the nature of a trial de novo, we need not require strict adherence to the waiver rules and cases governing indictable offenses or other offenses initially tried in the Law Division. *See R.* 3:1–1; *R.* 3:9–1(e); *R.* 3:16. *See also, e.g., State v. Luna,* 193 *N.J.* 202, 214, 936 *A.*2d 957 (2007) ("... the court must conduct an inquiry before proceeding with trial in order to determine if defendant's absence is knowing and voluntary.... The trial court has wide latitude in conducting such an inquiry"). *Rule* 3:21–4(b) expressly permits defendant to file "a written waiver of the right to be present [at sentencing]."

[7] We also note assigned counsel's obligation to file an appeal to us if desired by the client, and to move to be relieved thereafter. *See R.* 2:7–2(d); Pressler, *Current N.J. Court Rules,* comment 4 on *R.* 2:7–2(d) (2009). There is no indication of an intent to change the filing requirement when *R.* 3:27–2 was deleted and *R.* 2:7–4 was amended in 2004. *See also State v. Sheridan,* 280 *N.J.Super.* 419, 655 *A.*2d 934 (App.Div.1995); Pressler, *supra.*

well as his challenges to the denial of post-conviction relief. As a result we need not examine whether the de novo sentencing on the remand would by itself warrant consideration of the direct appeal with respect to the conviction. In any event, we summarily reject all defendant's contentions except to the extent we conclude the following comments are warranted. *See R.* 2:11–3(e)(2).

## A.

■ There is no question defendant did not waive his right to be present on the municipal appeal. Counsel, in fact, advised the court that defendant received no notice of the trial de novo. The trial de novo should not have proceeded under the circumstances without some waiver, even though defendant's attorney asked to proceed. Nevertheless, a trial de novo is on the record, and defendant suggests no basis on which the record could be supplemented. *See R.* 3:23–8(a).[8] Moreover, because we remanded the matter by our September 11, 2006 order, defendant had the opportunity to raise any issue he could have asserted on the original trial de novo. He points to nothing that could have been raised, but was not, and he was resentenced on the remand after being given the right to allocution. In these circumstances, there is no basis on which to reverse the conviction because he was not present at the trial de novo.

## B.

■ The municipal court judge decided to recuse himself, and he had the right to do so whether required or not. *See R.* 1:12. The issue giving rise to his decision arose after his findings of guilt were rendered. At the municipal court trial, neither defendant nor the judge recalled the hotdog cart incident of approximately eighteen years earlier, and defendant raised no issue with respect thereto before the findings were rendered. In light of these facts,

---

[8] As to the background and underpinning of our present two-tier system, *see* "Municipal Appeals," 4 *Crim. Just. Q.* 7 (1976).

we decline to hold that the findings of the Law Division which we review after a trial de novo are somehow tainted because the record was made before the municipal court judge.

## C.

■ Defendant claims that he was denied his constitutional rights during the trial in municipal court because the prosecutor asked that the courtroom be closed to the public "because the principal testifying party is a minor and the nature of the charges." The Sixth Amendment to the United States Constitution requires that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.
>
> [*U.S. Const.* amend VI (emphasis added).]

Defendant was not on trial for a criminal offense. He was charged with violation of *N.J.S.A.* 2C:33–4(b), a petty disorderly persons offense, and only "[a]n offense defined [in *Title* 2C] or by any other statute of this State, for which a sentence of imprisonment in excess of 6 months is authorized, constitutes a crime within the meaning of the Constitution of this State." *N.J.S.A.* 2C:1–4(a). *See also In re Mathesius,* 188 *N.J.* 496, 514 n. 8, 910 *A.*2d 594 (2006); *N.J.S.A.* 2C:1–4(b); 2C:1–5; "Preserving Jurisdiction Under the Code," 7 *Crim. Just. Q.* 1 (1979). Although our Supreme Court has not decided the application of the Sixth Amendment in this respect to municipal court proceedings, *see State v. Chun,* 194 *N.J.* 54, 137 n. 41, 943 *A.*2d 114 (2008), *petition for cert. filed,* 76 *U.S.L.W.* 3675 (2008), —— *U.S.* ——, 129 *S.Ct.* 158, 172 *L.Ed.*2d 41; *State v. Hamm,* 121 *N.J.* 109, 112–14, 577 *A.*2d 1259 (1990); *State v. Kent,* 391 *N.J.Super.* 352, 389, 918 *A.*2d 626 (App.Div.2007) (concurring opinion), the Court has adopted *Rule* 7:8–7(c), which addresses the exclusion of the public from municipal court proceedings. It provides:

> In matters involving domestic relations, sex offenses, school truancy, parental neglect, and as may be otherwise provided by law, the court, in its discretion and with defendant's consent, may exclude from the courtroom any person not directly interested in the matter during the conduct of the trial or hearing.
> [*R.* 7:8–7(c).]

We need not decide, or remand for development of a record, as to whether defendant actually favored the closure for obvious reasons. *See generally, Levine v. United States,* 362 *U.S.* 610, 617–20, 80 *S.Ct.* 1038, 1043–44, 4 *L.Ed.*2d 989, 996–97 (1960) (criminal contempt). He never objected to the closure, and we are not prepared to reverse his conviction on a plain error basis in these circumstances notwithstanding First and Sixth Amendment values. *See, e.g., Globe Newspaper Co. v. Superior Court,* 457 *U.S.* 596, 102 *S.Ct.* 2613, 73 *L.Ed.*2d 248 (1982) (trial judge can close criminal proceedings relating to sexual assault on case-by-case analysis, but mandatory rule violates the First Amendment); *Richmond Newspapers, Inc. v. Virginia,* 448 *U.S.* 555, 100 *S.Ct.* 2814, 65 *L.Ed.*2d 973 (1980) (plurality of seven opinions results in presumption criminal proceedings must remain open). Even assuming that this was not a case involving a sexual offense within the meaning of the *Rule* and that the proceedings should not have been closed, we find no basis for disturbing the conviction on trial de novo which was conducted in public proceedings in the Law Division.

## IV.

Because we have addressed on this direct appeal the principal contentions relating to defendant's PCR attack on the competency of counsel, we see no need to discuss them again in the context of the PCR. *See State v. Quezada,* 402 *N.J.Super.* 277, 285, 953 *A.*2d 1206, 1211 (App.Div.2008). Suffice it to say, as there is no basis for reversing the conviction on the grounds asserted, there is no basis for finding that defendant was denied the effective assistance of counsel.

The judgment is affirmed.