THE STATE OF NEW JERSEY, v.
MICHAEL GILLISON, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided September 21, 1977.

Mr. *John H. Stamler*, Union County Prosecutor, for the State (*Ms. Susan M. Scarola*, Assistant Prosecutor, of counsel and on the brief).

Mr. *S. David Levy*, Deputy Public Defender, for defendant (*Mr. Herbert I. Waldman*, Assistant Deputy Public Defender, of counsel and on the brief).

DI BUONO, A. J. S. C. The testimony of Duane Hemmings before the Union County grand jury appears to establish that on January 25, 1977 he was the victim of a robbery during which approximately $1.75 was taken from him by two persons, one of whom allegedly possessed a knife. Hemmings represented to the grand jury that after the robbery he identified a person at police headquarters as one of two persons who had robbed him. The following are pertinent questions directed to Hemmings before the grand jury and his responses:

Q. Now, did you have occasion to see the person later?
A. Only in police headquarters. I had to say it was him or not.
Q. Was one of the persons who had did this to you a *Michael Tillison?* [Emphasis supplied].
A. I guess so. If that's his name, I don't know him.
Q. But the people at police headquarters were the two persons who had done it to you?
A. Yes.

An indictment was returned against *Michael Gillison,* charging him with violation of *N. J. S. A.* 2A:141–1 (robbery), *N. J. S. A.* 2A:119–1 (larceny), *N. J. S. A.* 2A: 151–5 (while armed), and *N. J. S. A.* 2A:151–41(c) (possession of a weapon).

Defendant brings this motion to dismiss the indictment pursuant to *R.* 3:10–1 and *R.* 3:10–2, asserting that the evidence before the grand jury was insufficient to establish that defendant, Michael Gillison, was identified by the victim as being the same person named in the indictment.

The issue presented to the court, therefore, is whether the grand jury actually indicted defendant, Michael Gillison. In support of his motion to dismiss the indictment, defendant contends that the indictment does not refer to himself, but rather refers to a different person, namely one *Michael Tillison.* "To adequately present the State's case," defendant argues, "some evidence [before the grand jury] identifying the defendant as the person identified as the perpetrator was essential. Without such evidence, the Grand Jury could have determined that a crime was committed but could not properly determine against whom an indictment should be returned."

The question presented here is what is the necessary process for the determination of a specifically identifiable person as the one accused. Judge Learned Hand has stated:

Identity is ordinarily proved prima facie by similarity of name, though that may be answered by showing that there are two persons of the same name. When the names are not alike, other proof is

necessary; we may assume that the issue is always open, and that the prosecution has the burden of proof.
[*U. S. ex rel. Mouquin v. Hecht*, 22 *F.* 2d 264 (2d Cir. 1927), *cert.* den. 276 *U. S.* 621, 48 *S. Ct.* 301, 72 *L. Ed.* 736 (1928)]

The burden of proof remains solely upon the State, at all times, to prove to the satisfaction of a petit jury, beyond a reasonable doubt, that the defendant ultimately named in the indictment is the defendant appearing before the court and the individual who committed the crime in question. The purposes of an indictment are: "to enable a defendant to know that against which he must defend; to prevent an accusation in derogation of our interdiction of double jeopardy; and to preclude substitution by a trial jury of an offense for which the grand jury has not indicted." *State v. Spano*, 128 *N. J. Super.* 90, 92 (App. Div. 1973), aff'd 64 *N. J.* 307 (1974), paraphrasing *State v. Williamson*, 31 *N. J.* 16, 18 (1959).

It is the opinion of the court that the alleged perpetrator was clearly identified before the grand jury by the alleged victim although he was misnamed.

 The court further finds that the indictment withstands the test as enunciated in *State v. Spano, supra*, and therefore whether a minor misnomer is before the grand jury or in the indictment is of little consequence. An indictment should not be dismissed for minor misnomers. *In Hubbard v. State*, 62 *N. J. L.* 628, 629 (1898), it was held that an indictment changed from "Armstead Herbert" to "Armstead Hubbard" would be sufficient since a motion to amend would prevail. The court said:

> The indictments, although the defendant is misnamed therein, are no less valid indictments, under paragraph 9, article 1, of the amendments to the constitution of this State. [Art. 1, par. 7 of the 1947 Constitution], which provides that 'no person shall be held to answer for a criminal offense unless on the presentment or indictment of the grand jury.' [at 700].

See also, *U. S. v. Fawcett*, 115 *F.* 2d 764 (3 Cir. 1940) for

an approval of a change from "Harry Nelson" to "Harry Nelson otherwise known as Leon Wilson".

A similar issue was presented in the case of *Curtis v. Warden of Green Haven Prison*, 329 *F. Supp.* 333 (E. D. N. Y., 1971), aff'd 463 *F.* 2d 84 (2 Cir. 1972). In that case the accused was tried and convicted of criminally selling a dangerous drug. He brought a habeas corpus proceeding claiming that he was denied due process because he never was actually indicted for the crime.

The indictment upon which Curtis was convicted charged "Henry Doe" with having sold the drugs. Two of the three detectives on the case testified before the grand jury but neither detective supplied it with *any description* of the *accused*.

The undercover detective testified:

Q. Do you know his name?
A. First name only, Henry.
Q. Have you as of yet learned the identity [*sic*] of his last name?
A. No sir I haven't.
Q. Not as of today?
A. No sir.

The court concluded that

* * * the police knew the narcotics vendor as a specifically identifiable person; they did not know his name at the time and place when he made the sale to the undercover detective, but a fairly good description was then written down, although it was not a description that originally fitted the defendant or any other man. [329 *F. Supp.* at 334]

The court continued:

* * * although the detectives did not know the narcotic vendor's name until they found it out later, * * * the detectives know the man from whom the undercover detective had bought the narcotics they knew him by his appearance. When they learned later that the name of the vendor was Clyde Curtis and still later saw that name turn up on a list of unrelated arrests, they went to the place of detention, verified that Clyde Curtis was their narcotic

vendor Henry "Doe", and thereupon executed upon him the warrant that had been issued against Henry "Doe". [at 334]

The court later (at 335) recites the decision rule used in *Curtis*:

1. Was the defendant the person whom the Grand Jury indicted;
2. May that fact be shown by extrinsic evidence, where neither the descriptive matter in the indictment, nor the testimony presented to the Grand Jury taken with the form of indictment suffices unaided to identify the accused person.

The latter part of the decision rule, concerning the extrinsic evidence, is further particularized. The criteria are:

\* \* \* the extrinsic or "extraneous" evidence referred to is either evidence before the Grand Jury or evidence which must be (a) in existence, (b) known to the Grand Jury witnesses at the time they went before the Grand Jury and gave evidence on the basis of which the indictment was found, and (c) evidence integral with although not an articulated part of the evidence given to the Grand Jury so that, had the Grand Jurors pursued identification data with questions, adequately descriptive matter that could make the indictment on its face unique in its application to the intended defendant could have been presented to the Grand Jury, if good practice required it, could give rise to descriptive phrases for incorporation into the indictment itself instead of using such an abrupt designation as Henry "Doe". [at 336]

In *U. S. v. Hecht, supra*, 22 E. 2d at p. 265, Judge Learned Hand stated that "the jurors do not indict the man who committed the crime, but him described in the evidence before them." Thus the person the grand jurors intend to indict is the person indicted. The meaning of the grand jurors

\* \* \* is to be ascertained, like any other, from the words they use, not from what is in their minds; but the meaning to be attributed to their words may, in case of doubt, be found by looking at the circumstances under which they are uttered. \* \* \* They are to be understood, therefore, as indicting the persons described in the testimony if doubt arises. Hence, if it be shown that the witnesses described the person arrested, he is the person indicted.

In the case at bar the witness stated that he did not know defendant's name. He could only identify defendant by sight, which he did at the police station. Therefore, the name of defendant was meaningless to him. The name used by the prosecutor in referring to defendant as Michael Tillison before the grand jury, did not affect the victim's identification of defendant.

The motion to dismiss the indictment is denied.