NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4144-19
                    A-4447-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSEPH EHRMAN,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**July 23, 2021**

**APPELLATE DIVISION**

Argued May 10, 2021 – Decided July 23, 2021

Before Judges Sabatino, Currier and Gooden Brown.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Municipal Appeal No. 18-19; and the Superior Court of New Jersey, Law Division, Hudson County, Municipal Appeal No. 19-19.

Alison C. Ingenito argued the cause for appellant in A-4144-19.

Joseph B. Fiorenzo argued the cause for appellant in A-4447-19 (Sills Cummis & Gross, PC, attorneys; Joseph B. Fiorenzo and David W. Phillips, of counsel and on the briefs).

David J. Labib, Assistant Municipal Prosecutor, argued the cause for respondent (Jacob V. Hudnut,

Chief Municipal Prosecutor of City of Jersey City, attorney; David J. Labib, on the briefs).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

In these back-to-back appeals, which we consolidate for purposes of issuing a single opinion, defendant Joseph Ehrman challenges numerous complaint-summonses issued in municipal court by the Jersey City Department of Housing, Economic Development and Commerce (Department) for municipal violations in rental properties owned by various limited liability companies (LLCs)[1] in which Ehrman has an interest.

In A-4144-19, by leave granted, Ehrman appeals from the June 18, 2020 Law Division order denying reconsideration of the March 10, 2020 order, which denied his motion to dismiss twenty-five complaint-summonses issued

_____

[1] A limited liability company exists pursuant to the authority conferred under the New Jersey Limited Liability Company Act (LLCA), N.J.S.A. 42:2B-1 to -70, which was supplemented and repealed in part by the Revised Uniform Limited Liability Company Act (RLLCA), N.J.S.A. 42:2C-1 to -94. Under N.J.S.A. 42:2C-4, "[a] limited liability company may have any lawful purpose," N.J.S.A. 42:2C-4(b), and "is an entity distinct from its members." N.J.S.A. 42:2C-4(a). Thus, "[t]he debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise . . . are solely the debts, obligations, or other liabilities of the company," N.J.S.A. 42:2C-30(a)(1), and "do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager." N.J.S.A. 42:2C-30(a)(2).

to him individually for alleged housing code violations at two different rental properties. Ehrman argues that because the properties were owned by an LLC of which he was a member, rather than by him individually, the complaints were fatally defective on their face. Thus, Ehrman asserts that the trial court erred in denying his motion to dismiss the complaints and granting the State's cross-motion to amend the complaints to name the LLC instead of him. For the reasons that follow, we agree with Ehrman's assertions. Accordingly, we reverse and remand for entry of an order of dismissal without prejudice to the Department reissuing the complaint-summonses to the correct party, if appropriate.

In A-4447-19, Ehrman appeals from the June 30, 2020 order adjudicating guilt following a trial de novo in the Law Division for failure to file an annual registration for rental property in violation of the rent control municipal ordinance. Although the complaint-summons was issued to Ehrman individually for property owned by an LLC of which he was a member, the court found that the complaint-summons was intended to be issued to the LLC, instead of Ehrman individually. Thus, the court found only the LLC guilty of the violation. However, because it is undisputed that the LLC made no appearance by counsel during the trial or on appeal, and the municipal court record of conviction still lists Ehrman as the guilty party, consistent with our

ruling in A-4144-19, we reverse and remand for the entry of an order vacating the record of conviction as to Ehrman individually and for a new trial as to the LLC.[2]

I.

A-4144-19:

In this appeal, the facts are not disputed. On March 6, 2019, a housing code enforcement officer for the Department issued Ehrman eleven complaint-summonses alleging housing code violations at 47 Duncan Avenue in Jersey City.[3] The violations included failure to repair walls, ceilings, and floors, and failure to repair a porch and walkway. On March 20, 2019, a different housing code enforcement officer for the Department issued Ehrman fourteen complaint-summonses alleging housing code violations at 630 Bergen Avenue in Jersey City.[4] The violations included failure to repair, scrape, and paint

---

[2] The Attorney General declined our invitation to participate as amicus in these two appeals.

[3] The complaint-summonses were numbered 353831, 353833, 353834, 353835, 353836, 353837, 353838, 353839, 353840, 353841, and 353842. The specific housing code violation ordinance cited in the complaints is unclear in the record. See Jersey City, N.J., Ordinance § 254-45 (listing general safety and sanitation maintenance requirements for property owners).

[4] The complaint-summonses were numbered 354726, 354727, 354728, 354729, 354730, 354731, 354732, 354734, 354735, 354736, 354737, 354798, 354799, and 354800. The specific housing code violation ordinance cited in

walls and ceilings, failure to repair light fixtures, failure to eliminate infestation of mice, and failure to properly install heaters, carbon monoxide, and smoke detectors.

All twenty-five complaint-summonses were issued to Ehrman individually at a P.O. Box in Farmingdale. It is undisputed that Ehrman is not the record owner of either property. Instead, tax records and other documents show that at the time in question, both 47 Duncan Avenue and 630 Bergen Avenue were owned by Journal Square Group LLC, of which Ehrman is a member.

On June 19, 2019, Ehrman filed a motion in Jersey City municipal court to dismiss the complaints on the ground that under the RLLCA, he could not be named individually in the complaints when it was undisputed that the property was owned by an LLC of which he was a member. The State opposed the motion and cross-moved over Ehrman's objection to amend the complaints pursuant to Rule 7:2-5 to list the defendant as Journal Square Group LLC and designate Ehrman as "care of" to ensure proper service.

---

the complaints is unclear in the record. See Jersey City, N.J., Ordinance § 254-45 (listing general safety and sanitation maintenance requirements for property owners); Jersey City, N.J., Municipal Code § 1-25.A (describing permissible penalties and fines for violating codes and ordinances).

A-4144-19

On August 12, 2019, the municipal court judge denied Ehrman's motion and granted the State's cross-motion. Relying on Rule 4:9-1, which permits amendment of pleadings "by leave of court which shall be freely given in the interest of justice," the judge determined there was no prejudice to Ehrman in amending the complaint-summonses as requested by the State. The judge noted that inasmuch as the matters have not yet gone to trial, no liability has attached. Moreover, according to the judge, because Ehrman was designated as "care of" on the complaint-summonses, as "an officer of the LLC," he had "a fiduciary duty to disclose [the violations] to the LLC" once he received "notice"[5] of them.

Ehrman filed a motion in the Law Division seeking leave to appeal the interlocutory order entered by the municipal court judge, which motion was granted by the trial court. See R. 3:24(a) and (c). On February 13, 2020, after hearing the case de novo, the court denied Ehrman's motion to dismiss the complaints and granted the State's cross-motion to amend them. In a memorializing order entered on March 10, 2020, and accompanying written decision, the court explained that while Rule 7:2-5 allows the amendment of a summons "to remedy . . . [a] technical defect," "wrongfully filing a complaint

---

[5] The registered agent of Journal Square Group LLC is not identified in the record.

against the wrong individual is more than a technical defect" that would "ordinarily warrant dismissal of the complaints." However, relying on <u>Rule 4:9-1</u>, the court determined that amending the complaints as the municipal court judge had done was "an appropriate remedy" to overcome the "defect."

The court also rejected Ehrman's position that any remedy other than dismissal would "unfairly prejudice" him "personally and/or professionally." The court explained that

> dismissing the entire complaint against the LLC is not a remedy to the reputation hardship that [Ehrman] may suffer due to lawsuits and is not intended to be a remedy for such. Instead, the amendment is one which speaks to the "interest of justice" in fair litigation of the issue.

Additionally, the court rejected the State's contention that "the participation theory" justified "'pierc[ing] the veil' in an effort to hold [Ehrman] liable for using the LLCs as 'shell companies.'" The court noted that under N.J.S.A. 42:2C-4, "[a] limited liability company is an entity distinct from its members." The court also acknowledged that "[i]n certain circumstances, it is within the discretion of the court" to "'pierce the corporate veil' under the participation theory, which requires a showing that corporate officers are involved in tortious conduct surrounding the LLC or corporation." <u>See</u> <u>Saltiel v. GSI Consultants, Inc.</u>, 170 N.J. 297, 304 (2002) ("New Jersey cases that have applied the participation theory to hold corporate officers

7

personally responsible for their tortious conduct generally have involved intentional torts . . . . involv[ing] fraud and conversion.").

However, here,

> [t]he [c]ourt [was] not convinced that there [was] enough evidence to support that assertion. The State asserts, "there is a strong, if not seamless, connection between Joseph Ehrman and the LLC." This [c]ourt does not believe that a "strong" connection between an[] individual and a corporation or LLC is the type of connection intended by law to warrant piercing the corporate veil.
>
> Therefore, [Ehrman] cannot be held personally liable for the acts committed by the LLC.[6]

Ehrman moved for reconsideration, which was denied in a June 18, 2020 order. Thereafter, we granted leave to appeal

> solely limited to the issue of the propriety of the State issuing summonses solely to a principal of a[n LLC] . . . that is the record title holder of the subject premises without naming the LLC itself as a defendant or a codefendant, and seeking in the prosecution to impose individual liability upon a member of the LLC for municipal code violations.

On appeal, Ehrman raises the following points for our consideration:

> I. [N.J.S.A.] 42:2C-30 ASSIGNS THE DEBTS, OBLIGATIONS OR OTHER LIABILITIES OF AN LLC SOLELY TO THE LLC AND NOT TO ITS MEMBERS.

---

[6] The State did not move for leave to file a cross-appeal from that ruling.

II. [N.J.S.A.] 42:2B-23 EXPRESSLY STATES THE LIABILITIES OF AN LLC SHALL BE THOSE OF THE LLC AND NOT OF AN INDIVIDUAL BY REASON OF BEING A MEMBER.

III. [N.J.S.A] 42:2C-4A EXPRESSLY STATES AN LLC IS AN ENTITY DISTINCT FROM ITS MEMBERS.

IV. ALLOWING THE DEFENDANT'S NAME TO BE AMENDED ON A COMPLAINT WHEN IT WAS KNOWINGLY INCORRECTLY ISSUED, ALLOWS FOR SELECTIVE PROSECUTION AND ABUSE OF PROCESS BY JERSEY CITY HOUSING CODE ENFORCEMENT AND THE STATE.

V. THE LOWER COURT ERRED IN ITS RELIANCE ON R[.] 7:2-5 AND R[.] 4:9-1 TO ALLOW AN AMENDMENT OF THE NAME OF THE DEFENDANT ON THE QUASI-CRIMINAL COMPLAINTS.

The dispositive issue presented in this appeal is whether a municipal court complaint-summons issued to the wrong defendant must be dismissed or may be amended. "[P]rocedurally . . . a prosecution for violation of an ordinance is essentially criminal in nature irrespective of whether the penal section of the ordinance provides for a fine only or for both fine and imprisonment and even though such violation does not constitute an indictable offense. . . ." State v. Yaccarino, 3 N.J. 291, 295 (1949). Under N.J.S.A. 2B:12-17, a municipal court's jurisdiction includes "[v]iolations of county or municipal ordinances" "within the territorial jurisdiction of the court. . . ."

9                                                      A-4144-19

Rule 7:1 specifies that "[t]he rules in Part VII govern the practice and procedure in the municipal courts in all matters within their statutory jurisdiction. . . ." Rule 7:2-1(a) provides that in general, a municipal complaint "shall be a written statement of the essential facts constituting the offense charged" and "the complaining witness shall attest to the facts contained in the complaint by signing a certification or signing an oath before a judge or other person so authorized . . . ." Under Rule 7:2-1(c), "[t]he summons shall be directed to the defendant named in the complaint, shall require defendant's appearance at a stated time and place before the court in which the complaint is made, and shall inform defendant that a bench warrant may be issued for a failure to appear."

Unlike a citizen complaint, "[a] summons on a complaint made by a Code Enforcement Officer charging any offense within the scope of the Code Enforcement Officer's authority and territorial jurisdiction may be issued without a finding by a judicial officer of probable cause for issuance." R. 7:2-2(a)(4). A Code Enforcement Officer "responsible for enforcing the provisions of any state, county or municipal law, ordinance or regulation which the public employee is empowered to enforce," "may personally serve the summons on the defendant."

 A-4144-19

Like a criminal indictment, the primary purpose of the complaint is "to inform a defendant of the charges he must defend against." State v. Salzman, 228 N.J. Super. 109, 114 (App. Div. 1987). "Due process requires that the charging instrument not only inform a defendant respecting the nature of the charge, but it must also inform an accused of how many charges he or she faces and when they occurred." Ibid. To that end, "[t]he charging instrument such as a complaint cannot be a blank warrant to be filled in only at the time of trial as the evidence unfolds in the court room." Ibid.

Nonetheless, Rule 7:14-2 allows the court to

> amend any process or pleading for any omission or defect therein or for any variance between the complaint and the evidence adduced at the trial, but no such amendment shall be permitted which charges a different substantive offense, other than a lesser included offense. If the defendant is surprised as a result of such amendment, the court shall adjourn the hearing to a future date, upon such terms as the court deems appropriate.

See State v. Koch, 161 N.J. Super. 63, 66-67 (App. Div. 1978) (holding that while "[m]ere correction of errors or statutory references by amendment of a complaint does not offend traditional concepts of due process" an amendment that changed a motor vehicle violation to a more serious disorderly persons offense "deprived defendant of the due process or fundamental fairness inherent in any penal proceeding, criminal or otherwise").

11

Likewise, Rule 7:2-5 provides that "[n]o person arrested under a warrant or appearing in response to a summons shall be discharged from custody or dismissed because of any technical insufficiency or irregularity in the warrant or summons, but the warrant or summons may be amended to remedy any such technical defect." See State v. Bierilo, 38 N.J. Super. 581, 583-84 (App. Div. 1956) (rejecting the defendant's objection to "the informality of the summons" because the summons "actually fulfilled its purpose in apprising the defendant of the time and place of the hearing," despite "its unconventional phraseology").

Courts have permitted amendments under the rules to change a defendant's name. In State v. Sirvent, 296 N.J. Super. 279 (App. Div. 1997), the State initially charged the defendant's brother, Joseph Sirvent, with various motor vehicle violations but amended the complaint-summonses to "John Doe" once Joseph came to court and the officer informed the prosecutor that Joseph was not the person to whom he had issued the tickets. Id. at 281-82. After the municipal court judge dismissed the motor vehicle violations, we upheld the Law Division order reinstating the complaints against the defendant because "copies of the complaints were personally served upon defendant before his release on the complaint-summonses" and the defendant "expressly confirmed that he was the person who received the summonses at the time the complaints

were issued." Id. at 288. "Stated differently, defendant acknowledges that the complaint-summonses in his brother's name were served upon him when he was stopped or before his release from the police station the night he was stopped and the tickets were issued." Id. at 288-89.

A similar result was reached in State v. Rondinone, 291 N.J. Super. 489 (Law Div. 1996), where the Law Division denied a motion to dismiss a driving while intoxicated complaint-summons served upon a driver who produced somebody else's license, resulting in the summons being issued in the name of the licensee. The judge explained:

> [D]efendant's argument that the summons[] should be dismissed . . . fails since the defendant was issued a summons at the scene of the violation . . . , albeit in the wrong name. The fact that the summons was issued in the name of Michael Ottomanelli does not change the fact that defendant was personally issued process thereby giving him sufficient notice of the violation so that he was not forced to defend a stale claim.
>
> [Id. at 496.]

Corresponding provisions to Rules 7:2-5 and 7:14-2 appear in "[t]he rules in Part III govern[ing] the practice and procedure in all indictable and non-indictable proceedings in the Superior Court Law Division and . . . other courts . . . ." R. 3:1-1. While these provisions are inapplicable to these proceedings, they provide some guidance. See Richmond & Burns, N.J.

Municipal Court Practice, 8:5 (2021) (noting that "the language of a Part VII rule and the corresponding Part III rule . . . may be relevant in interpreting the Part VII rule").

In that vein, Rule 3:3-4 provides:

> (a)  Amendment.  No person arrested under a warrant or appearing in response to a summons shall be discharged from custody or dismissed because of any technical insufficiency or irregularity in the warrant or summons, but the warrant or summons may be amended to remedy any such technical defect.
>
> (b)  Issuance of New Warrant or Summons.  If prior to or during the hearing as to probable cause, it appears that the warrant executed or summons issued does not properly name or describe the defendant, or the offense with which the defendant is charged, or that although not guilty of the offense specified in the warrant or summons there is reasonable ground to believe that the defendant is guilty of some other offense, the court shall not discharge or dismiss the defendant but shall forthwith cause a new complaint to be filed and thereupon issue a new warrant or summons.

Additionally, Rule 3:7-4 provides:

> The court may amend the indictment or accusation to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense on the merits.  Such amendment may be made on such terms as to postponing the trial, to be had before the same or another jury, as the interest of justice requires.

14

Notably, under Rule 3:7-4, "[a] minor misnomer of the defendant does not constitute a material change if the defendant is in no way misled or otherwise prejudiced thereby." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 3:7-4 (2020). See State v. Gillison, 153 N.J. Super. 65 (Law Div. 1977) (holding that the difference between "Michael Tillison" and "Michael Gillison" was a minor misnomer); see also In re Hubbard v. State, 62 N.J.L. 628, 629 (1898) (holding that the difference between "Armstead Herbert" and "Armstead Hubbard" was a minor misnomer).

Applying these principles in our de novo review, we conclude that issuing a complaint-summons to the wrong party in the circumstances of this case is a fatal defect that is not subject to amendment under either Rule 7:2-5 or Rule 7:14-2. See State v. Kuropchak, 221 N.J. 368, 383 (2015) ("[L]egal conclusions are subject to de novo review."). This is not a situation in which Ehrman provided a false name or a situation in which the difference between the LLC and Ehrman could be characterized as a minor misnomer. Instead, the record owner of the rental property cited for the violations and the facially responsible party under the RLLCA is indisputably the LLC, not Ehrman, its member. See N.J.S.A. 42:2C-30(a)(1), (a)(2).

Further, we find that the court's reliance on Rule 4:9-1 was misplaced. Rule 4:9-1 provides that:

> A party may amend any pleading as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is to be served, and the action has not been placed upon the trial calendar, at any time within 90 days after it is served. Thereafter a party may amend a pleading only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice.

However, pursuant to <u>Rule</u> 4:1, "[t]he rules in Part IV, insofar as applicable, govern the practice and procedure of civil actions in the Superior Court, Law and Chancery Divisions, the surrogate's courts and the Tax Court except as otherwise provided in Part VI and Part VIII." Thus, <u>Rule</u> 4:9-1 is a rule of civil practice and does not apply to a quasi-criminal matter in municipal court as involved here.

We also conclude that the appropriate remedy is dismissal of the complaints without prejudice. Under <u>Rule</u> 2:10-2, an "error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result. . . ." While we are mindful of the procedural posture of the case, we believe that a remand for dismissal of the complaints without prejudice will address Ehrman's claims of prejudice. Although Ehrman was hailed into court by a summons rather than a warrant, "[a] summons in lieu of warrant is not . . . without consequence since it initiates the criminal process, compels appearance to answer the complaint,

and may lead to the routine issuance of an arrest warrant upon the failure of appearance." State v. Ross, 189 N.J. Super. 67, 73-74 (App. Div. 1983). Indeed, Ehrman claims that the consequences he suffered included the need "to hire personal legal counsel to represent him at his own cost"; "the possibility of a warrant being issued for his arrest"; the complaints appearing in "a public record search" of him; being subjected "to baseless allegations, in open court, which are damaging both personally and professionally"; and the possibility of incurring personal liability for the "LLC's financial obligations for housing violations."

We note that the dueling accusations of gamesmanship on the part of each side are irrelevant to the limited issues presented in this appeal and we make no determination as to whether any of those claims have merit. We do point out, however, that the trial court was "not convinced" that there was enough evidence to support the State's assertions that the connection between Ehrman and the LLC justified piercing the corporate veil under the law.[7] Nonetheless, our holding does not preclude the Department from reissuing the

---

[7] In its February 13, 2020 oral decision on the motion, the court also stated that there was insufficient evidence to support Ehrman's claim that he was being purposefully targeted or harassed by the Department.

complaints to the correct defendant and proceeding in a manner consistent with the law.

II.

A-4447-19:

In this appeal, on December 11, 2018, Deja Anderson, a code enforcement officer for the Department, issued complaint-summons No. 353437 for failure to file an annual rent registration "on or about [December 11, 2018,]" for a property located at 95 Beacon Avenue in violation of Jersey City, N.J., Municipal Code § 260-2.F (section 260-2.F).[8] Section 260-2.F provides:

> Every owner and/or landlord shall within 90 days following the effective date of this subsection or the creation of the first tenancy in any dwelling containing five (5) or more housing spaces, whether or not subject to the restrictions of rent increases under this Chapter, file a landlord registration statement with the Bureau of Rent Leveling[9] . . . .

---

[8] A violation of any section of the Municipal Code carries with it a potential fine "of up to two thousand dollars . . . ." Jersey City, N.J., Municipal Code § 1-25.A; see also N.J.S.A. 40:49-5 (providing authority for municipalities to impose penalties "not exceeding [$2000]" for code violations).

[9] Jersey City Municipal Code created the "Bureau of Rent Leveling" within the Department, "the head of which shall be the Rent Leveling Administrator," Jersey City, N.J., Municipal Code § 260-8.A, whose authority included the power to "remedy violations" and "bring[] appropriate legal charges as provided in th[e] chapter." Jersey City, N.J., Municipal Code § 260-9.A. Pursuant to Jersey City, N.J., Municipal Code § 260-9.B, the appointment of

The information to be included in the registration statement includes "[t]he name and address of the record owner or owners of the dwelling and the record owner or owners of the rental business if not the same person."  Jersey City, N.J., Municipal Code §260-2.F(1)(a).  "If the record owner is a corporation, the name and address of the registered agent and corporate officers of the corporation" were also required.  Jersey City, N.J., Municipal Code §260-2.F(1)(b).

Additionally,

> [b]etween January 1 and March 3 of each calendar year, all owners and/or landlords of dwellings shall file with the Bureau of Rent Leveling a new landlord registration statement for each dwelling owned.  An owner and/or landlord who purchases a dwelling on or after April 1 of any year shall also file a landlord registration statement within seven (7) days of purchase.
>
> [Jersey City, N.J., Municipal Code §260-2.F(2).]

The complaint-summons was issued to "Joseph Ehrman, c/o JC Group, LLC" at an address on Central Avenue in Farmingdale.  The property that was the subject of the citation, 95 Beacon Avenue, was purchased on June 13, 2017, by three entities with different percentage interests: JCP Group 5 LLC; JCP JE 5 LLC; and JCP ZELL 5 LLC.  Under section 260-2.F(2), a landlord

the Rent Leveling Administrator is delegated to "the Director of the Department . . . ."

19

registration statement for 95 Beacon Avenue was required within seven days of the June 13, 2017 purchase date.

A three-day trial on the complaint-summons was conducted in the Jersey City municipal court on non-consecutive days, beginning June 4, 2019. During the trial, Anderson, the State's sole witness, testified that she issued the complaint-summons in question because an audit revealed that as of December 11, 2018, there was no landlord registration statement on file for 2017 for 95 Beacon Avenue, which was an eleven unit rent control property subject to the registration requirements of section 260-2.F. She testified that based on the tax records and deed recorded for the property, which listed JCP Group 5 LLC as one of three record owners as of June 13, 2017, a landlord registration statement was due by June 20, 2017, but was never submitted.

Anderson stated she was instructed by her division director "to add a name" of "an individual, most often the managing agent's name," to "any summons . . . being written out to an LLC" because "warrants for failure to show up cannot be executed on an LLC." She averred that the complaint-summons was not issued to Ehrman "individually," but "to the LLC." She acknowledged that her "intent" was to issue the complaint-summons to "JCP Group 5, LLC, care of Joseph Ehrman," in his capacity as "managing member

of the LLC,"[10] but that she mistakenly issued it to "Joseph Ehrman, care of JCP Group, LLC" instead.[11]

Anderson confirmed that she was authorized to issue the complaint-summons. She stated that although she held a different civil service title, on August 6, 2018, she "was appointed by the [D]epartment [D]irector" as one of "two acting alternate rent leveling administrators" authorized to perform the duties of the then Rent Leveling Administrator, Charles Odei, who went out on medical leave from July 2018 to April 2019.[12] Anderson stated that from June 20, 2017, when the 2017 landlord registration statement for 95 Beacon Avenue was due, to July 2018 when Odei went out on sick leave, to her knowledge, Odei had not issued a complaint-summons for violating the ordinance. Anderson stated that on October 19, 2018, she was administered an oath that authorized her to act as a code enforcement officer for the Department and was

---

[10] On cross-examination, Anderson acknowledged that Ehrman was known to her office in connection with his non-compliance with requirements related to other Jersey City properties with which he was affiliated.

[11] Notwithstanding Anderson's testimony, as the municipal court judge noted, the handwritten complaint-summons in the record reads "J.E. Group, LLC."

[12] According to Anderson, in October 2018, there was a restructuring in the Department whereby the Bureau of Rent Leveling, headed by Odei, and the Office of Landlord Tenant Relations, managed by Anderson, were placed in the Division of Housing Preservation headed by Director Dinah Hendon.

therefore duly authorized to issue the subject complaint-summons on December 11, 2018.

Anderson testified further that after the complaint-summons was issued, on February 20, 2019, her office received an incomplete and untimely 2017 landlord registration statement for 95 Beacon Avenue.[13] According to Anderson, the statement was signed on February 18, 2019, but the "landlord name and title [were] blank." Additionally, the statement listed the owner of the property as Sixth Boro Rentals and listed the owner's street address on Central Avenue in Farmingdale. Ehrman was listed as President, Treasurer, and Secretary of Sixth Boro Rentals in the "partners or corporate officers" section of the statement, and "JCP Group Member" was listed as the registered agent. While Ehrman's street address on the statement was listed as Central Avenue in Farmingdale, the registered agent's address was listed as Central Avenue in Jersey City, which Anderson recognized as an incorrect address.

At the conclusion of the State's case, Ehrman moved to dismiss the complaint on several grounds pursuant to Rule 3:18-1, one of which was that the Department charged "the wrong defendant" because Ehrman was not the record owner of 95 Beacon Avenue. Defense counsel asserted that Ehrman

_____

[13] On cross-examination, Anderson stated she never sent a notice to anyone advising them that they had thirty days to cure the 2017 violation because it was not office policy.

was a member of the LLCs that owned the property and, as a member, could not "be held personally responsible for an act of the LLC."  In opposition, the prosecutor asserted that "[n]obody[ was] seeking to . . . hold . . . Ehrman[] personally responsible" or "to pierce the corporate veil."  The prosecutor confirmed that he was prosecuting the LLC only, and, as such, dismissal was not warranted.  In denying the motion, the municipal court judge agreed that "[t]he State [was] prosecuting the LLC," of which "Ehrman just happen[ed] to be a member."  The judge stated that pursuant to Rule 7:2-5, there was no "deadly defect" warranting dismissal because the LLC was "listed on the face of the [complaint-]summons."  Thereafter, four witnesses testified for the defense, Charles Odei, Yechezkel (Chez) Whiter, Alison Ingenito, and Henry Ehrman, Joseph Ehrman's brother.

Odei believed he was the only person authorized to appoint an acting Rent Leveling Administrator to serve in his absence from the office.  Because he did not authorize Anderson to act in that capacity or issue complaint-summonses during his absence, he opined that Anderson's actions were not legally authorized.  Further, he confirmed that prior to his extended absence, he did not issue a violation for 95 Beacon Avenue.  Odei also acknowledged that the landlord registration statement received in the office in February 2019 purporting to be the statement for 2017 was noncompliant.

However, to support the defense theory that the required landlord registration statement had been filed on time, Odei testified that on July 12, 2017, he emailed Henry Ehrman, attaching a "copy of the [landlord] registration form" pursuant to their prior discussions, and requesting that he "complete one [form] for all the newly acquired properties . . . manage[d]/own[ed]" by his company, including 95 Beacon Avenue. Odei also informed Henry in the email that "pursuant to the code[,] said form should be filed with [his] office within [seven] days of any changes in ownership or management." However, Odei testified that because the entities involved had simultaneously acquired a large number of properties, he extended the filing deadline an additional thirty days.

Odei acknowledged that on July 18, 2017, Chez Whiter sent him the landlord registration statements for the properties, including 95 Beacon Avenue's, which he forwarded to his staff for processing notwithstanding the fact that there was information missing from the 95 Beacon Avenue statement and the required filing fee was not tendered. Odei also admitted that the office policy required the submission of a hard copy in conjunction with an email submission, and that a hard copy of the registration statement was never received.

A-4144-19

Henry, an employee of Sixth Boro Rentals, confirmed receipt of Odei's July 12, 2017 email and testified that he forwarded it to Whiter for handling. Whiter testified that in response to Odei's email, on July 18, 2017, he sent an email to Odei attaching the landlord registration statements for thirty-four buildings acquired by his company on June 13, 2017. The acquisition included 95 Beacon Avenue. He acknowledged that the statement for 95 Beacon Avenue listed Sixth Boro Rentals as the record owner because of its affiliation with the record owners and listed Joseph Ehrman as the "[m]anaging [m]ember" and the "[r]egistered [a]gent[]" of the record owner.[14]

Whiter also acknowledged that although the landlord registration statement was a "three or four[-page]" form, he only sent the first page of the form and, therefore, did not file a complete statement. He further acknowledged that the portion of the statement showing the year for which it was filed was left blank. He also admitted that he did not send a hard copy and did not include the required filing fee. However, he stated that when he did not receive any further communication from Odei, he assumed that Odei had

---

[14] As the managing member, Ehrman's address was listed on Central Avenue in Farmingdale, but as the registered agent, his address was listed as Central Avenue in Jersey City.

accepted the statement as compliant and that nothing further was needed until the 2018 statement was due.[15]

On cross-examination, Whiter acknowledged that there were inconsistencies between the statement he emailed to Odei on July 18, 2017, and the statement that was later received by the Bureau of Rent Leveling in February 2019, which was submitted by Alison Ingenito, a practicing attorney who represented Sixth Boro Rentals. Ingenito testified she submitted the statement along with a check for the required filing fee that was subsequently cashed by the Department. However, Ingenito candidly admitted that the filing was late. She testified further that "Sixth Boro Rentals, LLC" was not the owner of 95 Beacon Avenue but was "the umbrella corporation" that served as the "management group" for the record owners of 95 Beacon Avenue.

At the conclusion of the defense's case, defense counsel renewed his motion for dismissal of the complaint-summons, pointing out that he "represent[ed] Joseph Ehrman, not any one of the three LLCs" listed as the record owners of 95 Beacon Avenue. In response, the prosecutor reiterated that "nobody [was] seeking to hold Mr. Ehrman personally liable . . . but . . .

---

[15] Anderson testified that a 2018 landlord registration statement for 95 Beacon Avenue was filed on June 4, 2018, and included a check issued by Sixth Boro Rentals in the amount of $110 for the required property registration fee.

[was] seeking to . . . hold the LLC liable." The municipal court judge again denied the motion.

Following summations, the judge found "J.C.P. Group, LLC guilty of [violating] the ordinance" and imposed a $700 fine with $33 in court costs. In an oral decision, the judge found Anderson, the State's only witness, "credible" "based upon her demeanor," "her recollection," and "her ability to answer questions posed by both the prosecution and defense." Accordingly, the judge made detailed factual findings in accordance with her testimony.

In contrast, the judge found Odei "lack[ed] credibility." According to the judge, "Odei appeared uninterested, nonchalant, indifferent, somewhat bitter and aggrieved, rebellious, strategic, and inert." Based on "Odei's testimony and demeanor," the judge discerned that "there was and is some sort of power play going on within the Rent Leveling Office." Likewise, the judge found that Whiter "also lack[ed] credibility" and "was clearly apprehensive, nervous, and . . . uncomfortable on the witness stand." Although the judge found Henry Ehrman "partially credible," he was also "extremely apprehensive, unsure and . . . uncomfortable on the stand" and "had very little to provide . . . in terms of pertinent facts."

In analyzing the witnesses' testimony, the court explained that

> if Odei had actually received the landlord registration
> statement as both Whiter and Henry Ehrman testified,

27

his clerks would have contacted the landlord to explain the forms were deficient and also explain the need for a hard copy.

Both Whiter and Henry Ehrman testified that they never heard from Odei once they allegedly submitted the statements. Hence, there is a significant question as to whether the forms were ever really submitted.

Regarding Ingenito's testimony, while the judge found her testimony "credible," and presumed that her submission of the statement in February 2019 was in response to the complaint-summons issued in December of 2018, the judge "question[ed] why [she] would . . . file the statement in February of 2019 if Whiter filed it via email in July of 2017." The judge queried:

If the statement [w]as sent as an attachment via email in July of 2017 as testified by Whiter, why not forward that exact copy of the statement to the Rent Leveling Office. Why the need to fill out a whole new form. Was that because the form in July of 2017 was never actually filed? Was it because the form was deficient to say the least and Whiter knew that? It is this [c]ourt's opinion that quite frankly Ms. Ingenito bolstered the State's case.

The judge concluded that "the State has proven its case beyond a reasonable doubt" based on Anderson's testimony that the June 13, 2017 purchase of 95 Beacon Avenue required the submission of a compliant landlord registration statement by June 20, 2017, and that the statement was never submitted.

The judge again rejected Ehrman's argument "that the [c]ourt should either dismiss [the complaint-summons] . . . or render a not guilty finding based upon the fact that the [complaint-summons] reads specifically Joseph Ehrman care of J.C.P. Group, LLC as opposed to J.C.P. Group, LLC care of Joseph Ehrman."  The judge reasoned:

> Anderson who issued the summons testified that she inadvertently reversed the names on the summons[] when she wrote it.  She testified that at no time was she issuing a ticket to the defendant personally.  She included Joseph Ehrman's name on the summons since he is the managing agent.
>
> . . . .
>
> [Rule] 7:2-5 specifically states that any technical insufficiencies or irregularities in the . . . summons may be amended to remedy such defect.  However, this is not an actual defect per se.  The named defendant is listed on the [complaint-summons] as is one of the managing agents' names.  The order in which they appear is irrelevant.  Had the prosecution sought to prosecute Joseph Ehrman personally, the summons would have been written out to his name alone.[16]

---

[16]  The judge also rejected "defense counsel's argu[ment] that the actual corporate name on the summons [was] incorrect and [did] not match any of the names listed on the deed."  The judge explained that although "[t]he deed list[ed] J.C.P. Group V, LLC as an owner" and the complaint-summons was missing "the numeral [V]," defense counsel "waived" the issue by failing to object "prior to trial []or during the actual trial."  The judge noted further that the defense was not "prejudiced" and had defense counsel made a timely objection, "the prosecutor would have moved to amend . . . pursuant to [Rule] 7:2-5."

When defense counsel reiterated that he did not represent "J.C.P. Group[] LLC," the judge stated that he "waived that argument by not raising it pretrial."

The Law Division reviewed the case de novo pursuant to Rule 3:23-8. In an order entered June 30, 2020, the trial court found J.C.P Group LLC guilty of violating the ordinance in question and re-imposed the fine imposed by the municipal court judge. In an accompanying written decision, the trial court gave due deference to the municipal court judge's credibility determinations but conducted a de novo trial on the record, making its own findings of fact and conclusions of law. See State v. Robertson, 228 N.J. 138, 147 (2017) ("At a trial de novo, the court makes its own findings of fact and conclusions of law but defers to the municipal court's credibility findings."). Regarding the amendment of the complaint-summons to name the LLC rather than Ehrman individually, consistent with its earlier March 10, 2020 decision on Ehrman's interlocutory appeal of the issuance of twenty-five unrelated complaint-summonses, the court "deemed it proper to allow for the complaint to be amended to include the LLC[] rather than [Ehrman] individually."

In this ensuing appeal, Ehrman, in his individual capacity, raises the following points that were previously rejected by the trial court for our consideration:

30

POINT ONE[17]

THE SUMMONS WAS CLEARLY ISSUED WELL
BEYOND THE EXPIRATION OF THE STATUTE
OF LIMITATIONS, AND SHOULD HAVE BEEN
DISMISSED AS A MATTER OF LAW.

POINT TWO

THE SUMMONS WAS NOT ISSUED BY A LAW
ENFORCEMENT OFFICER OR A CODE
ENFORCEMENT OFFICER, AND THERE WAS NO
PROBABLE CAUSE HEARING.

POINT THREE

THE TRIAL COURT FAILED TO TAKE INTO
ACCOUNT THE UNCONTESTABLE FACT THAT
THE CITY RECEIVED A 2017 RENT
REGISTRATION FOR THE PROPERTY ON JULY
18, 2017.

POINT FOUR

THE TRIAL COURT SHOULD HAVE DISMISSED
THE SUMMONS BECAUSE THE CITY NAMED
JOSEPH EHRMAN AS A DEFENDANT.

POINT FIVE

THE SUMMONS SHOULD BE DISMISSED FOR
FAILURE TO GIVE 30-DAYS['] NOTICE AND AN
OPPORTUNITY TO CURE.

Because it is undisputed that the finding of guilt was against the LLC,

and not against Ehrman individually, we remand for the entry of an order

---

[17] We condensed the points for clarity.

vacating the record of conviction as to Ehrman. In light of that disposition, we need not address the points raised by Ehrman in his individual capacity. See In re D'Aconti, 316 N.J. Super. 1, 13 (App. Div. 1998) (reiterating that to have standing a plaintiff must have "suffered an injury in fact, an injury must be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court,' and it must be likely that the injury will be redressed by a favorable decision." (alterations in original) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992))).

Regarding the LLC, we cannot sustain the finding of guilt because of an even more basic defect in the proceedings, not raised by the parties. It is undisputed that the LLC never appeared by counsel in the municipal court trial nor on appeal. In accordance with Rule 1:21-1(c), subject to certain exceptions not applicable here, "an entity, however formed and for whatever purpose, . . . shall neither appear nor file any paper in any action in any court of this State except through an attorney authorized to practice in this State." See also Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 1:21-1(c) (2020). In our view, in the absence of an appearance by counsel or a clear waiver of such, the finding of guilt against the LLC constitutes a violation of constitutional dimension requiring reversal.

A-4144-19

Rule 7:2-2(h) provides "[i]f a corporation, partnership or unincorporated association has been served with a summons and has failed to appear on the return date, the court shall proceed as if the entity had appeared and entered a plea of not guilty." Given Ehrman's position as a member of the LLC, duly served with a summons for the LLC in his representative capacity, we find no fault with the municipal court or the trial court proceeding as if the LLC had appeared and entered a plea of not guilty. See R. 7:6-2(a)(2) ("If a defendant that is a corporation, partnership, or unincorporated association fails to appear or answer, the court, if satisfied that service was duly made, shall enter an appearance and a plea of not guilty for the defendant and thereupon proceed to hear the complaint."). It does not follow, however, that a court may conduct a full-blown trial and render a verdict against the LLC without the LLC's appearance by counsel or the courts' inquiry as to a valid waiver for the entirety of the trial.

Generally, proceedings in municipal courts for violations of ordinances are governed by criminal procedural rules. Newark v. Pulverman, 12 N.J. 105, 114 (1953). See also State v. Labato, 7 N.J. 137, 151 (1951) (noting that such "quasi-criminal" proceedings are "subject to the procedural rules governing criminal prosecutions"); State v. Taimanglo, 403 N.J. Super. 112, 115 (App. Div. 2008) ("Part III of the Rules Governing the Courts of the State of New

33

Jersey apply to municipal appeals in the Law Division. . . ."); State v. Woodlands Condominium Ass'n, 204 N.J. Super. 85, 89 (Law. Div. 1985) ("The action was quasi-criminal in nature with all inherent constitutional guarantees that attach to such proceedings.").

The constitutional right of an accused to the assistance of counsel is fundamental. "Both the Federal and State Constitutions guarantee criminal defendants the right to counsel." State v. Maisonet, 245 N.J. 552, 565 (2021) (citing U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10). In Rodriguez v. Rosenblatt, 58 N.J. 281, 295-96 (1971), the Court recognized the right to counsel in quasi-criminal municipal court prosecutions.

Like individuals, "corporations are entitled to the assistance of counsel under both the United States Constitution and New Jersey Constitution. . . ." State v. W. World, Inc., 440 N.J. Super. 175, 202 (App. Div. 2015); see In re 668 Advisory Comm. on Pro. Ethics, 134 N.J. 294, 302 (1993) (recognizing that the Sixth Amendment's right to counsel applies to corporations); see also N.J.S.A. 1:1-2 (defining person to include "corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals, unless restricted by the context to an individual as distinguished from a corporate entity"); N.J.S.A. 2C:1-14(g) (providing that under the

Criminal Code, "'[p]erson[]' . . . include[s] any natural person and, where relevant, a corporation or an unincorporated association").

"Defendants possess not only the right to counsel, but the right to dispense with counsel and to proceed pro se." State v. Crisafi, 128 N.J. 499, 509 (1992). However, "[a] defendant can exercise the right to self-representation only by first knowingly and intelligently waiving the right to counsel." Id. at 509. Trial judges are required "to engage in a searching inquiry with defendants seeking to proceed pro se" and are required to "establish the waiver on the record." Id. at 509-10.

Additionally, "[t]he right of the accused to be present in the courtroom at every stage of the trial is an essential ingredient of our organic law." State v. Davis, 281 N.J. Super. 410, 413 (App. Div. 1995); see R. 3:16(b). However, a defendant may waive the right by "express written or oral waiver placed on the record" or "conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgement of the trial date, or (2) trial has commenced in defendant's presence." R. 3:16(b); see Taimanglo, 403 N.J. Super. at 121 (recognizing that despite their entitlement to be present at de novo appeals from municipal court, "defendants frequently elect not to attend when

represented by counsel" but requiring "a waiver . . . submitted by counsel either in writing or orally by counsel if authorized to do so").

> [I]n order to sustain a waiver of the right to be present, it must be shown the trial date was actually communicated to the defendant and the accused unjustifiably failed to appear. Moreover, the right cannot cursorily, and without inquiry, be considered waived by the trial judge simply because the accused does not appear on the date set for trial. The trial judge should attempt to learn where the defendant is and why he is absent and make appropriate factual findings.
>
> [Davis, 281 N.J. Super. at 416 (citing State v. Hudson, 119 N.J. 165, 182-84 (1990)).]

See also State v. Luna, 193 N.J. 202, 214 (2007) ("[T]he court must conduct an inquiry before proceeding with trial in order to determine if defendant's absence is knowing and voluntary.").

In the case of a corporate defendant, "[a] corporation shall appear by its attorney for all purposes." R. 3:16(b). Notably, when a corporation is charged with an indictable offense, the corporation should be "noticed to appear on a date certain by written communication mailed to its last known business address." In re Appointment of Counsel to CLM Const. Co., 277 N.J. Super. 329, 332-33 (App. Div. 1994). If necessary, the court may compel, "by appropriate writ," the appearance of the president or registered agent "to

A-4144-19

answer questions respecting the corporation's status, its ability to retain counsel and its plan respecting the defense to the indictment." Id. at 333.

Here, while the municipal court was justified in entering a plea of not guilty when the LLC failed to make an appearance by counsel in response to the complaint-summons, R. 7:2-2(h), both the municipal and trial courts erred in conducting a trial in the LLC's absence without inquiring on the record to ascertain whether there was a knowing and voluntary waiver. R. 3:16(b); see Taimanglo, 403 N.J. Super. at 122 (finding that where "[t]here [was] no question defendant did not waive his right to be present on the municipal appeal," "[t]he trial de novo should not have proceeded . . . without some waiver, even though defendant's attorney asked to proceed").

"We are not unaware of the provision of R[ule] 3:23-8(c), which provides that the taking of a de novo appeal to the Law Division 'shall operate as a waiver of all defects in the record including any defect in, or the absence of, any process . . . .'" Ross, 189 N.J. Super. at 74 (alteration in original) (quoting R. 3:23-8(c)). "It is also well settled, however, that the waiver does not apply in respect of defects of a constitutional or jurisdictional nature." Ibid. "We regard the nature of the defect here as one of such substantial magnitude as to compel the inapplicability of the waiver rule." Id. at 74-75. Therefore, we reverse the order of conviction and remand for a new trial.

"[T]he result reached in this case . . . should not be thought to foreclose other constructive approaches to the problems underlying this litigation; nor should our ultimate determination be interpreted as a lack of awareness . . . with respect to the significant public concerns which actuated this prosecution." State v. Lawn King, Inc., 84 N.J. 179, 216 (1980).

In A-4144-19, reversed and remanded for dismissal of the complaint-summonses without prejudice.

In A-4447-19, reversed and remanded for the entry of an order vacating the record of conviction as to Ehrman and for a new trial as to the LLC. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION